**BROWNSTONE INVESTMENT GROUP, LLC, Plaintiff,**

v.

**Gordon LEVEY, Defendant.**

**Gordon Levey, Counterclaim and Third–Party Plaintiff,**

v.

**Brownstone Investment Group, LLC, Douglas B. Lowey, Stephen B. Lowey, Barret Naylor, and Lowey Family Investment LLC, Counterclaim and Third–Party Defendants.**

No. 06 CV 0747 VM.

United States District Court, S.D. New York.

Jan. 3, 2007.

Harry Simeon Davis, William Hayward Gussman, Jr., Schulte Roth & Zabel LLP, New York, NY, for Plaintiff, Counterclaim and Third–Party Defendants.

Jamie Mark Brickell, Stacey Marie Faraci, Pryor, Cashman, Sherman & Flynn, L.L.P., New York, NY, for Defendant, Counterclaim and Third–Party Plaintiff.

Eric B. Fisher, Rachel Kathryn Marcoccia, Morgenstern Jacbos & Blue, LLC, New York, NY, for Counterclaim and Third–Party Defendants, Barret Naylor.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Brownstone Investment Group, LLC ("Brownstone") brought this case against defendant Gordon Levey ("Levey") seeking a declaratory judgment determining that Levey had breached his fiduciary duties to Brownstone and misappropriated trade secrets, as well as injunctive relief preventing Levey from offering or disclosing Brownstone's proprietary computer software.

Levey responded with a number of counterclaims against Brownstone and third-party complaints against Douglas B. Lowey ("Douglas Lowey"), Stephen B. Lowey ("Steven Lowey"), Barret Naylor ("Naylor"), and Lowey Family Investment LLC ("LFI"). Brownstone, Douglas Lowey, and LFI have submitted answers to Levey's counterclaims and third-party complaint. Naylor and Stephen Lowey both move to dismiss Levey's claims

against them pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons set forth below, Stephen Lowey's motion is GRANTED, and Naylor's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

The following facts are taken from Levey's counterclaims and third-party complaint (the "TPC"), which the Court accepts as true for the purpose of ruling on the motions to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (*citing Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001)).

In 1996, Douglas Lowey and Levey, who had known each other professionally for several years, decided to start their own broker/dealer business. The two agreed that Douglas Lowey would obtain a broker/dealer license from the NASD, and that Levey would provide proprietary technology to the firm and would oversee the firm's infrastructure. At that time, Douglas Lowey represented to Levey that if Levey closed his consulting firm, Lev-Tek Corporation ("LevTek"), provided its proprietary technology to the new company, and further developed related internet-based technology, he and Douglas Lowey would share ownership of the firm equally. Based on that representation, Levey closed LevTek, contributed its technology to the new company, and began to play a number of roles for the new company, including technology development.

On January 3, 1997, Douglas Lowey and Levey formed a new company under the name "The Worldvest Group, LLC." Douglas Lowey and Levey discussed bringing in Naylor as an additional owner of the company, at which time the three of them would share equally in the firm. Naylor was to be responsible for sales. In early 1998, the name of the company was changed to "Brownstone Investment Group, LLC."

Levey worked at Brownstone from its founding until the early in 2006. Levey contends that he is and has always been one of the owners of the company. Since the time that Brownstone was founded, Douglas Lowey, Naylor, and Levey have had many disagreements about how Brownstone's profits were to be divided among them. Levey complained to Douglas Lowey that he was not satisfied with the amount he was being paid and that he felt it did not reflect the parties' understanding when Brownstone was created. Levey discussed the issue of his compensation with Douglas Lowey on January 12, 2006, and Douglas Lowey refused to consider changing Levey's compensation. As a result of this discussion, on January 26, 2006, Levey advised Douglas Lowey that he would be leaving Brownstone. Levey demanded the return of his capital account as well as payment of an amount equal to 10 percent of the company's worth, even though he believes he was entitled to receive one-third of that value. On January 31, 2006, Brownstone filed its complaint in this action.

Levey alleges that Brownstone brought this lawsuit, which states that he is not a member of the firm, in an attempt to deprive him of his ownership interest. Levey contends that the parties have been conducting the business of Brownstone without a signed operating agreement, but that Brownstone has been providing an unsigned draft operating agreement to its accountants and auditors, among others. That unsigned draft operating agreement states that Levey is one of four members, along with Douglas Lowey, Naylor, and LFI. Stephen Lowey, Douglas Lowey's father, is the principal of LFI and also served as counsel to Brownstone.

Levey asserts that he is a member and one-third owner of Brownstone and is therefore entitled, under a breach of contract theory, to the return of his capital account as well as a cash payment equal to one-third of the company's value. Alternatively, if the Court finds that he is not a member/owner of Brownstone, Levey argues that he is entitled to: (1) a declaratory judgment stating that he is the sole owner of the computer software he created for Brownstone, (2) damages for fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conversion, and (3) rescission of the agreement he alleges he had with Douglas Lowey, Naylor, and Brownstone.

## II. DISCUSSION

### A. LEGAL STANDARD

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For purposes of a Rule 12(b)(6) motion, the Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993).

### B. FRAUD

Levey's Fourth Counterclaim/Third–Party Claim ("Claim 4"), entitled "Fraud," is asserted against Brownstone, LFI, Douglas Lowey, Stephen Lowey, and Naylor. It states that "[t]o perpetuate the fraud described above, the counterclaim and third-party defendants acted in conspiracy to deprive Levey of his ownership interest in Brownstone." (TPC ¶ 63.)

The "fraud described above" refers to Levey's Third Counterclaim/Third–Party Claim ("Claim 3"), which alleges that Douglas Lowey fraudulently induced Levey "to close his business LevTek Corporation, to contribute the technology owned by LevTek technology to the new entity, and to devote his full time efforts and resources to Brownstone." (*Id.* ¶ 51.) To accomplish this task, Levey alleges, Douglas Lowey represented to Levey that he would be an equal owner of Brownstone with both Douglas Lowey and Naylor, and that he would have equal management control in the company. (*See id.* ¶ 52.) Levey further alleges that after he began working at Brownstone, Douglas Lowey fraudulently induced him to stay at Brownstone by falsely representing that he would receive the one-third interest in Brownstone that he had previously been promised. (*See id.* ¶ 54.)

■ In order to state a claim for fraud under New York law, a plaintiff is required to allege the following five elements: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.,* 443 F.3d 230, 234 (2d Cir.2006); *see also Cohen v. Houseconnect Realty Corp.,* 289 A.D.2d 277, 734 N.Y.S.2d 205, 206 (App. Div.2d Dep't 2001).

■ Additionally, Fed.R.Civ.P. 9(b) requires that fraud claims be pleaded with particularity. Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Thus, conclusory allegations of fraud will be dismissed under Rule 9(b). *See*

*Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir.1971). To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987).

■ Levey's fraud claim against Naylor and Stephen Lowey fails to allege the required elements and fails to plead with particularity as required by Rule 9(b). The TPC alleges that Naylor and Stephen Lowey "testified untruthfully" in the action at bar "by claiming that Levey is not a member of Brownstone." (TPC ¶ 66.) Levey fails to allege any representation made by Naylor or Stephen Lowey upon which Levey could have relied in deciding to close LevTek, contribute its technology to Brownstone, and devote his efforts to Brownstone. For one, the alleged misrepresentation occurred in the course of this litigation, after Levey had already left Brownstone. (*See* TPC ¶ 64.) *See Kashelkar v. Rubin & Rothman*, 97 F.Supp.2d 383, 395 (S.D.N.Y.2000) ("Plaintiff does not and cannot plead reliance because all of the alleged 'misrepresentations' appeared in legal papers in the course of adversary litigation; they were not statements made by [defendant] upon which Plaintiff relied or changed his position in reliance thereon."). Additionally, it would be incongruous and highly unreasonable for Levey to have been induced into believing that he was a member of Brownstone in reliance on statements that he is *not* a member of Brownstone.

Levey also charges that "Brownstone, through Douglas Lowey and its counsel, Stephen Lowey, filed a complaint and sought an injunction against Levey based on statements they knew to be false." (TPC ¶ 64.) To the extent that Levey is attempting to base his fraud claim against Stephen Lowey on the filing of a lawsuit in bad faith, with knowledge that complaint contained false statements, the claim must be dismissed. The appropriate remedy for such a violation, if sufficient evidence were found to support it, would be a motion for sanctions pursuant to Fed.R.Civ.P. 11. *See Caisse Nationale de Credit Agricole–CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir.1994) ("Under Fed.R.Civ.P. 11, sanctions may be imposed on a person who signs a pleading, motion, or other paper for an improper purpose such as to delay or needlessly increase the cost of litigation, or does so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.").

Levey argues in response that Naylor and Stephen Lowey have mischaracterized the scope of his fraud claim. (*See* Memorandum of Law in Opposition to Third–Party Defendant Barret Naylor's Motion to Dismiss the Third–Party Complaint of Gordon Levey ("Levey Opp'n to Naylor") 8; Memorandum of Law in Opposition to Third–Party Defendant Stephen Lowey's Motion to Dismiss the Third–Party Complaint of Gordon Levey ("Levey Opp'n to Stephen Lowey") 8.)

■ With respect to Naylor, Levey argues that his fraud claim "arises from a series of ongoing misrepresentations made from the very beginning of the parties' collaboration in Brownstone and continu-

ing through the instant litigation." (Levey Opp'n to Naylor 8.) Levey refers to paragraph 24 of the TPC, in which he alleges, "It was always discussed that, once Naylor agreed to join them, he and Douglas Lowey and Gordon Levey would each share equally in the firm." (TPC ¶ 24.) This allegation, however, fails to meet the standard of specificity required by Rule 9(b). It is not clear that this allegation even refers to any statement or representation made by Naylor, and it certainly does not meet the requirements of Rule 9(b) that the pleading "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills,* 12 F.3d at 1175. As noted above, the complaint must "inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio,* 822 F.2d at 1247.

As to Stephen Lowey, Levey argues in his response: "The true scope of Stephen Lowey's fraudulent behavior occurred long before he filed a meritless complaint and injunction motion. It was those earlier misrepresentations which Levey relied upon to his detriment." (Levey Opp'n to Stephen Lowey 8.) Levey cites paragraph 16 of the TPC as alleging that "Stephen Lowey explicitly assured Levey that he was a member of Brownstone and therefore possessed an ownership interest in the company." (*Id.*) However, this allegation is not contained in that paragraph or, for that matter, anywhere else in the TPC. In reality, the only representations that the TPC alleges were made by Stephen Lowey occurred in the course of this litigation.

■ In response to the motions to dismiss brought by Naylor and Stephen Lowey, Levey has submitted a number of documents, including an affidavit by Levey dated February 22, 2006 and several attached exhibits. (*See* Levey Opp'n to Naylor 2–7; Levey Opp'n to Stephen Lowey 1–6.) A good deal of the argument in Levey's opposition briefs is based on references to these documents. But, a complaint cannot be modified by a party's affidavit or by papers filed in response to a dispositive motion to dismiss or for summary judgment. *See Streit v. Bushnell,* 424 F.Supp.2d 633, 639 n. 3 (S.D.N.Y.2006) (*citing Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998)). Because these documents were not relied upon, attached to or incorporated by reference in the TPC, the Court has given no consideration to their content.

■ Although Levey does not state a claim of fraud against Naylor or Stephen Lowey, a claim of conspiracy may lie where an underlying tort of fraud has been adequately pleaded. *See Baker v. R.T. Vanderbilt Co.,* 260 A.D.2d 750, 688 N.Y.S.2d 726, 729 (App. Div. 3rd Dep't 1999) (citations omitted) ("Since New York does not recognize an independent tort of civil conspiracy, such a cause of action is available only if there is evidence of an underlying actionable tort."). "Under New York law, a claim of civil conspiracy requires '(i) an agreement between the conspirator and the wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy.'" *Gabriel Capital, L.P. v. NatWest Finance, Inc.,* 94 F.Supp.2d 491, 511 (S.D.N.Y.2000) (*quoting Vasile v. Dean Witter Reynolds Inc.,* 20 F.Supp.2d 465, 482 (E.D.N.Y.1998), *aff'd,* 205 F.3d 1327, 2000 WL 236473 (2d Cir.2000)).

■ Accordingly, if Levey had adequately pleaded a claim of fraud against Douglas Lowey, he may plead a claim of conspiracy against Naylor or Steven Lowey by alleging the existence of an agreement and a wrongful act committed in furtherance of that agreement. *See AM*

*Cosmetics, Inc. v. Solomon,* 67 F.Supp.2d 312, 322 (S.D.N.Y.1999) ("Plaintiffs may plead the existence of a conspiracy in order to connect the actions of the individual Defendants with an actionable, underlying tort, and establish that those actions were a part of a common scheme.") (*citing Litras v. Litras,* 254 A.D.2d 395, 681 N.Y.S.2d 545 (1998)); *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 123 (2d Cir.1981) ("The allegation 'is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts.'") (*quoting Rutkin v. Reinfeld,* 229 F.2d 248, 252 (2d Cir.1956)). "Allegations of a civil conspiracy, therefore, are proper only for the purpose of establishing joint liability by co-participants in tortious conduct." *John's Insulation, Inc. v. Siska Const. Co.,* 774 F.Supp. 156, 162 (S.D.N.Y. 1991).

 However, "to survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy. Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy." *Fitzgerald v. Field,* No. 99–3406, 1999 WL 1021568, *4 (S.D.N.Y. November 9, 1999) (citations omitted). "Accordingly, a bare conclusory allegation of conspiracy does not state a cause of action." *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 123 (2d Cir.1981) (*citing Goldstein v. Siegel,* 19 A.D.2d 489, 244 N.Y.S.2d 378 (1963)).

 Here, Levey attempts to extend liability for the alleged fraud to Naylor and Stephen Lowey by alleging that they "acted in conspiracy to deprive Levey of his ownership interest in Brownstone." (TPC ¶ 63.) This allegation is conclusory. The TPC fails to adequately allege facts supporting the conclusion that Stephen Lowey or Naylor entered into an agreement with Douglas Lowey or that either of them committed wrongful acts in furtherance of such an agreement. The underlying fraud claim (Claim 3) involves alleged misrepresentations made by Douglas Lowey with the intent of inducing Levey to close his business and join Brownstone. Nowhere in the TPC does Levey claim that Naylor or Stephen Lowey agreed to aid Douglas Lowey in this alleged fraud, or even that either of them was aware of these statements. The alleged acts in furtherance of the conspiracy—that Naylor and Stephen Lowey "testified untruthfully by claiming that Levey is not a member of Brownstone" and have "fraudulently and wrongfully seized control of Levey's interest in Brownstone for their own benefit"— both occurred after Levey left Brownstone and were not made in furtherance of the alleged fraud. (TPC ¶¶ 66, 67.) As noted above, Levey cannot argue that he was induced into believing that he was a member of Brownstone by statements to the contrary.

The primary authority cited by Levey in his opposition brief, *Four Star Capital Corp. v. Nynex Corp.,* 183 F.R.D. 91 (S.D.N.Y.1997), involved a different set of circumstances. In that case, the court concluded that the plaintiff's allegations were adequately specific because the complaint alleged, among other things, that the defendants "were fully aware of [the] representations and approved the use of such statements despite knowledge of their falsity." *Id.* at 109.

Finally, Naylor also urges dismissal of Levey's fraud claim on the basis that it is duplicative of his breach of contract claim against Brownstone. Naylor argues that Levey's fraud claim is simply that Naylor and others "conspired to deprive him of his alleged contractual benefit of the bargain." (Memorandum of Law in Support of Barret Naylor's Motion to Dismiss the Third–Party Complaint "Naylor Mem." 7.) Levey

responds that his fraudulent inducement claim is distinct from his breach of contract claim, and that the underlying misrepresentations go beyond a mere intention not to perform. (*See* Levey Opp'n to Naylor 13.) To the extent that Levey's fraud claim against Naylor is based on a theory of fraudulent inducement, it is not duplicative of his breach of contract claim. As discussed above, however, the TPC fails to adequately allege any misrepresentations by Naylor with regard to fraudulent inducement.

## C. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

Levey alleges in his Fifth Counterclaim/Third–Party Claim that Douglas Lowey owed a fiduciary duty to him as a fellow member of Brownstone, and that Douglas Lowey breached this duty by: (1) selling bonds for his own personal account and for the account of LFI at below-market prices, (2) working almost fulltime for his hedge fund, Brownstone Asset Management ("BAM"), while continuing to receive his salary from Brownstone, (3) using Brownstone office space for BAM business without charging rent, and (4) using Brownstone's assets to pay for personal vacations.

Levey alleges in his Seventh Counterclaim/Third–Party Claim that Stephen Lowey knew Douglas Lowey was breaching his fiduciary duty and actively and knowingly participated in those breaches. Stephen Lowey moves to dismiss this claim against him on the basis that Levey's pleadings are conclusory with respect to his participation and on the basis that Levey's injury was not direct and therefore the claim should have been brought derivatively on behalf of Brownstone.

 Because the harm resulting from the alleged breaches of fiduciary duty would be to Brownstone, any lawsuit seeking redress must be brought either by Brownstone or derivatively on behalf of Brownstone. The Court notes that although the New York LLC statute does not expressly authorize derivative lawsuits and the law is unsettled regarding whether New York LLC members may bring derivative actions, a court in this district recently held that they may do so. *See Bischoff v. Boar's Head Provisions Co.,* 436 F.Supp.2d 626 (S.D.N.Y.2006). Assuming for the purposes of this motion that Levey is a member of Brownstone, Levey has failed to allege any injury to himself that is "separate and distinct" from that to the company. *See Baltus–Michaelson v. Credit Suisse First Boston, LLC,* 116 Fed. Appx. 308, 309 (2d Cir.2004); *At The Airport v. ISATA, LLC,* 438 F.Supp.2d 55, 64 (E.D.N.Y.2006). The Court therefore concludes that Levey lacks standing to bring this claim directly. Accordingly, the Court need not decide whether Levey has pleaded this claim with sufficient specificity.

## D. RESCISSION

Levey's Eighth Counterclaim/Third–Party Claim ("Claim 8") alleges that if he is not an equal owner of the company then he has been deprived of the essential term of the bargain that he entered into with Brownstone, Douglas Lowey, and Naylor. In that case, Levey argues, he is entitled to a rescission of the agreement and a return to him of the software that he contributed to Brownstone.

 Naylor moves to dismiss this claim on the ground that Levey does not allege that Naylor had authority to enter into an agreement with Levey with respect to Brownstone, or that Naylor did in fact negotiate with him with regard to any ownership interest in Brownstone. Although the TPC is not entirely clear as to Naylor's precise role in the formation of an agreement with Levey, it does allege that

Levey "contributed his time, his resources, and his proprietary software to Brownstone based upon an agreement he had with Douglas Lowey, Naylor, and Brownstone that he would become an equal owner of the company with Douglas Lowey and Naylor." (TPC ¶ 95) Thus, drawing all reasonable inferences in favor of the Levey, the Court finds that Levey has adequately pleaded that Naylor was a party to the alleged agreement that Levey seeks to have rescinded.

■ Naylor also seeks dismissal on the basis that Levey unreasonably delayed in bringing his claim. Whether any delay by Levey in seeking rescission was reasonable is a factual question for the jury and is not a proper basis for a motion to dismiss under Rule 12(b)(6). *See Ladenburg Thalmann & Co. v. Imaging Diagnostic Sys., Inc.,* 176 F.Supp.2d 199, 205 (S.D.N.Y. 2001); *Int'l Motor Sports Group, Inc. v. Gordon,* No. 98–5611, 1999 WL 619633, *5 (S.D.N.Y. August 16, 1999). In this case, there are significant questions of fact as to when Levey became aware of the alleged fraud, and the Court can not conclude "beyond doubt" that Levey "can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

### E. *DECLARATORY JUDGMENT*

In his Second Counterclaim/Third–Party Claim ("Claim 2"), asserted against Brownstone, Douglas Lowey, Stephen Lowey, Naylor, and LFI, Levey claims that, if it is determined that Levey is not a member of Brownstone, he is entitled to a declaration that he is the sole owner of the computer software that he created and which is being used at Brownstone. Levey argues that it would be inconsistent to find that he is merely an employee of Brownstone and that he contributed the computer software to the company.

Stephen Lowey moves to dismiss this claim against him, pursuant to Fed. R.Civ.P. 12(b)(1), on the basis that he is not a member of Brownstone and therefore is not an appropriate defendant for this claim. Levey indicates in his opposition memorandum that he has agreed to withdraw the claim against Stephen Lowey "in view of the undisputed evidence that he is not a direct member of Brownstone." (Levey Opp'n to Stephen Lowey 4 n. 1.) To the extent that Claim 2 has not been formally withdrawn, it is hereby dismissed as against Stephen Lowey.

■ Naylor also moves to dismiss Claim 2. Naylor's motion to dismiss states simply that the TPC is "utterly devoid of any detail which would warrant the imposition of the requested declaratory relief." (Naylor Mem. 10.) Levey does not address Claim 2 in his opposition memorandum, and Naylor makes no further argument with respect to it in his reply memorandum (*See* Levey Opp'n to Naylor; Reply Memorandum of Law in Further Support of Barret Naylor's Motion to Dismiss the Third–Party Complaint ("Naylor Reply").)

■ The Second Circuit has stated that a district court "must entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. If either prong is met, the action must be entertained." *Continental Cas. Co. v. Coastal Sav. Bank,* 977 F.2d 734, 737 (2d Cir.1992) (*citing Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir.1969), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970)). In this case, there is a dispute between the parties regarding the ownership of the

software in question, and there are substantial questions of law and fact that must be addressed before that issue can be settled. The Court therefore finds no basis for dismissing the declaratory judgment claim.

Naylor's argument in favor of dismissal is apparently that because Levey's claims for fraud and rescission of contract should be dismissed, so too should his request for a declaratory judgment. This argument lacks merit, however, because the issue of ownership of the software is not dependent on the fraud or rescission claims. In fact, Brownstone also has sought a declaratory judgment in this case, stating in essence that the computer software belongs to Brownstone and that Levey's alleged possession and disclosure of it constitutes misappropriation of trade secrets.

## III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion to dismiss (Docket No. 31) of third-party defendant Stephen B. Lowey is GRANTED without prejudice; and it is further

**ORDERED** that the motion to dismiss (Docket No. 29) of third-party defendant Barret Naylor is GRANTED in part and DENIED in part. The motion is GRANTED without prejudice with respect to the cause of action for fraud of defendant and third-party plaintiff Gordon Levey ("Levey"); and it is DENIED with respect to the Levey's causes of action for declaratory judgment and rescission.

**SO ORDERED.**